# LEE WAH KOON *v.* MAUI DRY GOODS AND GROCERY COMPANY, LIMITED, A CORPORATION.

## No. 1708.

### APPEAL FROM CIRCUIT JUDGE SECOND CIRCUIT. HON. H. L. ROSS, JUDGE.

SUBMITTED JANUARY 5, 1927.                    DECIDED FEBRUARY 28, 1927.

### PERRY, C. J., BANKS AND PARSONS, JJ.

SPECIFIC PERFORMANCE—*pleading—demurrer—where full performance depends upon the consent of a third person.*

The fact that a complaint shows that full performance depends on the consent of a third person does not render it demurrable, since *non constat* but that such consent may be obtained.

SAME—*part performance with compensation or abatement—knowledge of claim of third person.*

A contract with the owner of the fee of a piece of land for the release (1) of respondent's claim to right of possession of same under an expired lease containing provisions for renewal upon notice which respondent claims to have given, and (2) of a third person's claim under a sublease from the respondent, may be specifically enforced in equity as to the respondent's claim, with compensation or abatement from the purchase price on account of the subtenant's claim, in the event that the subtenant refuses to release the same, notwithstanding complainant's knowledge at the time of entering into the contract of the existence of subtenant's claim.

SAME—*pleading—demurrer—statute of frauds.*

Allegation of agreement by respondent corporation, for executed consideration, followed by copy of memorandum of said agreement showing same to have been signed by the corporation by its president, with allegation that the said memorandum was executed and delivered by the respondent, held, upon demurrer, to show sufficient compliance with the statute of frauds, without allegation of authority of president or subsequent ratification by the corporation.

OPINION OF THE COURT BY PARSONS, J.

Complainant's bill alleges, among other things:

1. "That complainant is the owner of all that certain lot of land, being the remainder and residue of all the premises described in R. P. 1986, situated at Waiakoa, Kula, in the County of Maui, Territory of Hawaii, and containing an area of 14 acres, and particularly described in that certain deed from Manuel Asue and wife to the complainant herein, said deed being dated the 31st day of May, 1924, and recorded in liber 734, on pages 419-420, a copy of which is hereto attached, marked Exhibit 'A' and prayed to be taken and considered a part of this bill of complaint."

2. "That heretofore on, to-wit, the 27th day of March, 1912, E. H. Kekapai, one of the complainant's predecessors in title, and the then owner of the land hereinbefore described, executed a lease to respondent, which said lease is of record in Book 363, pages 250-253 of the registry of conveyances for the Territory of Hawaii, and a copy of which is hereto attached, marked Exhibit 'B' and prayed to be considered a part of this bill of complaint.

"That the term of said lease was ten years from the date thereof and therefore it expired on the 27th day of March, 1922, but it was provided in said lease that if the lessee should, at any time within six months before the expiration thereof give the lessor notice in writing of its desire to renew the same, it should be renewed.

"That said E. H. Kekapai died on to-wit, the 20th day of November, 1920, and before the expiration of the term of said lease."

3. "That upon the acquiring of title by complainant as aforesaid, he sought the possession and enjoyment of the said land but was denied the same by respondent who claimed a right to renewal of its said lease under the terms thereof on account of various notices given prior to the acquisition of title by complainant. That complainant thereupon filed in the circuit court of the second judicial circuit of the Territory of Hawaii an action of ejectment against said Maui Dry Goods and Grocery Company Limited, and one K. Takemori, who was a sublessee of respondent in possession of said premises, for

the restitution thereof and for damages for its detention. That upon hearing said cause, on to-wit, the 25th day of July, 1925, the court rendered a decision in favor of the defendant and against the plaintiff to which judgment of the court the plaintiff duly and legally excepted."

4. "That thereafter on to-wit, the 4th day of August, 1925, the respondent agreed to surrender to complainant all of its right, title and interest, as well as all right, title and interest of said K. Takemori, its sublessee in possession, in and to the said land of complainant, the consideration of said agreement being the payment to respondent by complainant of two hundred dollars in cash and the promise of complainant to pay the further sum of one hundred and fifty dollars to it; that thereupon respondent executed and delivered to complainant an instrument in writing in words and figures as follows:

" '$200                    Wailuku, Maui, August 4th, 1925.

'Received from Lee Wah Kon Two Hundred and 00/100 ——— Dollars, in cash and promissory note for $150.00, total $350.00, being the price agreed upon for surrender of all of our right, title and interest, as well as all right, title and interest of Takemori in and to 14 acres of land under lease, at Waiakoa, Kula, Maui, T. H. Takemori to remove his buildings, and to take out his bean crop on or before November 15th.

'Maui Dry Goods & Grocery Co Ltd.

'(Sgd.)    J. Garcia President.'

"That on the 14th day of November, 1925, complainant offered to pay and tendered to the respondent one hundred fifty dollars in payment of the note referred to in above quoted instrument of writing and said payment was refused by respondent; that thereupon complainant demanded of respondent the surrender to him of all its right, title and interest, and of all the right, title and interest of K. Takemori in and to said 14 acres of land in accordance with said agreement of August 4, 1925, and this respondent refused to do."

5. "That complainant is informed and believes and on information and belief avers the fact to be that respondent is seeking to evade its said agreement with complainant because the said K. Takemori demanded of

it payment of the sum of two hundred dollars and a refund of rent paid it by said Takemori on or about the 2d day of November, 1925, before he would surrender and release his claims in and to the possession of said land; that on or about the 20th day of November, 1925, J. Garcia, president of respondent corporation, handed to A. E. Jenkins, Esq., attorney for Lee Wah Koon, an instrument in writing in words and figures as follows:

" 'Nov. 20th, 1925.

'Tender is hereby made by Maui Dry Goods & Grocery Co Ltd. to Lee Wah Koon, in the sum of $56.00 U. S. Gold Coin, being rental for one year of 14 acres at Waiakoa, Kula, Maui, as per terms of lease.

'Refund in the sum of $350.00 is hereby tendered Lee Wah Koon, by his attorney, this amount having been previously agreed upon as the cash amount for cancellation of lease from E. H. Kekapai to Maui D G & G Co Ld upon cancellation by Takemori of the sub-lease to him, Takemori having previously verbally agreed to cancel his sub-lease. Takemori having now refused to cancel, and having paid his rental according to the lease, the Maui Dry Goods & Grocery Co Ld tenders refund of the cash settlement price previously agreed upon

'Demand is hereby made by Maui Dry Goods & Grocery Co Ltd. of Lee Wah Koon, thru his attorney, for a renewed lease under the same terms as the original lease from E. H. Kekapai covering 14 acres of land at Waiakoa, Kula, Maui, T. H. The Maui Dry Goods & Grocery Co Ld are ready and willing to have said document drawn at once.'

"That complainant refused said tenders, and declined to execute a 'renewed lease' and insisted that respondent comply with the terms of its agreement with complainant as hereinbefore set out."

6. "That prior to bringing this action to-wit on the 8th day of December, 1925, complainant made a further and additional demand on respondent in writing as follows:

" 'December 8, 1925.

'Maui Dry Goods & Grocery Co., Ltd.,
Wailuku, Maui, T. H.

'*Attention Mr. J. Garcia, President.*

'Dear Sir:

'With further reference to the receipt and agreement be-
tween yourself and Lee Wah Koon under date of August
4th, 1925, in connection with which, you will recall that
on November 14th, 1925, I tendered you $150.00 in cash
in payment of Lee Wah Koon's note in that amount, de-
mand is hereby made on you to surrender all of your
right, title and interest, as well as the right, title and
interest of Takemori in and to fourteen acres of land
under lease from yourself to the said Takemori, and
which you are claiming under an alleged extension of
lease from Lee Wah Koon, as successor of Kekapai to
yourself.

'Tender is again made herewith of $150.00 in cash, in
payment of Lee Wah Koon's promissory note of like
amount, referred to in the agreement of August 4th, 1925.

'Lee Wah Koon
By /s/ A. E. Jenkins
His attorney.' "

7. "That the agreed rental under the terms of the
said lease of March 27th, 1912, from E. H. Kekapai to
respondent was four dollars per acre per year, and the
agreed rental for said 'land between K. Takemori and re-
spondent under the terms of a sublease was eight dollars
per acre per year; and complainant is informed and be-
lieves, and avers on information and belief, that the real
rental value of the said land is sixteen dollars per acre
per annum; that the term of the sublease from respondent
to said Takemori expires on the 1st day of November,
1931."

The prayer of the bill in part is "that complainant
may have a specific performance of the agreement herein
set forth, or, in the event respondent cannot perform
said agreement in full that it be compelled to surrender
all of its right, title and interest in said premises to com-
plainant and that respondent be required to compensate

complainant for its failure to fully perform said agreement in such an amount as the court shall find from the evidence is just and proper" and for other and further relief.

Respondent demurred to the foregoing bill upon six grounds as follows:

"1st. That the said bill of complaint, does not set forth grounds sufficient to constitute a cause of action against the respondent, nor to entitle the complainant to the relief prayed for, nor for any relief in a court of equity;

"2nd. That the alleged contract, the performance of which is sought to be enforced is an alleged and purported contract for the sale of an interest in and concerning lands without the said contract, or a memorandum thereof, being in writing signed by the party to be charged therewith, or by some person thereunto by it in writing lawfully authorized;

"3rd. That the said bill of complaint affirmatively shows that the performance of the alleged contract, the performance of which is sought to be enforced is impossible by reason of the fact that respondent cannot perform the same without obtaining the consent thereto of a third person, to-wit; one K. Takemori, which consent the said K. Takemori is free to withhold and which consent the said K. Takemori does withhold;

"4th. That the said bill of complaint affirmatively shows that the performance or attempted performance of the alleged contract, the performance of which is sought to be enforced, would constitute a violation of a sub-lease and agreement entered into between respondent and one K. Takemori, prior to the alleged contract with complainant, which said sub-lease and agreement is still in force and effect;

"5th. That the said bill of complaint shows that the complainant has not done equity or acted equitably and does not intend to do equity by reason of his refusal to execute a renewed lease of the premises referred to, in accordance with the covenant so to do contained in the lease of E. H. Kekapai, predecessor in interest of the

said complainant to the respondent, dated the 27th day of March 1912, a copy of which lease is attached to complainant's bill, marked Exhibit B and by reference made a part thereof;

"6th.    That the complainant by his bill of complaint seeks to recover damages for a breach of an alleged agreement, rather than the performance of a contract which it is clearly and manifestly impossible for respondent to perform, which said damages the said complainant, if entitled thereto, can and ought to be required to recover in a court and in an action at law."

The trial judge by ruling and decree sustained respondent's demurrer upon the first, third and sixth grounds above set forth and dismissed complainant's bill. From said ruling and decree complainant appeals.

The grounds of demurrer are not considered separately in the trial judge's written decision. The decision appears to be based, primarily, upon the assumption that the complaint shows affirmatively the impossibility of performance as to obtaining surrender of Takemori's interest and upon the ground that the complaint does not state facts sufficient to entitle the complainant, upon supporting proof, to the relief of partial performance and abatement, for the reason that at the time of entering into the contract the vendee knew that the vendor had not the title which he agreed to convey.

Quoting from the trial judge's decision (record pp. 27, 28, 29 and 30) : "The bill recognizes that the respondent cannot perform as to Takemori but asks for performance in part and for compensation or damages as to the sublessee.    *    *    *    Respondent contends that the rule that 'where the defendant cannot perform without obtaining the consent of a third person, who is free to withhold his consent, and does withhold it, that a decree of specific performance will not be made,' is controlling in this case.    *    *    *    'The rule that when a vendor is unable to comply with the contract, by reason of not having the

legal title to all the land, the vendee is entitled to spe-
cific performance for such as he has title, with com-
pensation for the residue, does not apply when the
vendee knows at the time of purchase that the vendor
has not full title.' (Syllabus.)  *Knox* vs. *Spratt*, 6 So.
924.  'Where defendant cannot perform a contract with-
out obtaining the consent of a third person, who is free
to withhold his consent, and does withhold it, the decree
will not be made.'  *Citronelle Turpentine Co.* vs. *Buhlig*,
63 So. 951.  'Plaintiff is not entitled to specific perform-
ance of a contract for exchange of land where he knew
when he entered into the contract that defendant owned
only one-half interest in the land, and that it would re-
quire conveyances from others before the contract could
be carried out.'  *Thompson* v. *Music*, 116 Pac. 612.
'Where the purchaser has entered into the contract in
ignorance of the vendor's incapacity to convey the whole
title, equity may compel the vendor to perform to the
extent of his ability and allow an abatement of the pur-
chase price for any deficiency.'  *Id.*  'If it appears, by the
bill or otherwise, that the want of title (even if caused
by the defendant's own act, as by his conveyance to a
bona fide purchaser) was known to the plaintiff at the
time of bringing the suit, the bill will not be retained for
assessment of damages, but must be dismissed and the
plaintiff left to his remedy at law.'  *Kennedy* v. *Hazel-
ton*, 128 U. S. 667 (671).  'The vendee, in a contract
where the vendor is not vested with the title he agrees
to convey, may recover his damages, if any, in an action
at law, but he cannot have specific performance.'  'This
result is also involved in the general rule, upheld by the
great weight of authority, that specific performance will
not be decreed unless the right to insist thereon be
mutual.'  'There are certain exceptions to this rule (mu-
tuality of rights), of which one need be noticed in this

connection. He who, having some interest in or defective title to land, agrees to convey a good title, cannot escape his liability in an action for specific performance, provided the purchaser elects to accept such title as the vendor's deed will convey; otherwise the law would enable such a vendor to take advantage of his own fault or wrong.' (Citing cases). 'Such a waiver of full performance has the effect to make the remedy mutual, and partial performance will be enforced, with assessment of damages or abatement from the contract price by reason of the failure to perform in full. This right to waive a defect and compel a conveyance, notwithstanding the vendor's inability to perform, is held not to exist where the vendor has not some apparent right or interest in the property, *or where the vendee enters into the contract knowing the vendor has not the title which he agrees to convey.'* (Citing cases.) *Ormsby* vs. *Graham,* 98 N. W. 724 (727). To enforce the agreement in accordance with the allegations and prayer of the complaint would work an injustice on the respondent, and would be contrary to equitable principles."

A careful examination of complainant's bill does not sustain the trial judge's above quoted premise that said bill recognizes that the respondent cannot perform as to Takemori. On the contrary it discloses an allegation (Pars. 4 and 5) of an agreement for the surrender of respondent's and Takemori's interests and a subsequent seeking to evade this agreement upon the excuse, in effect, that Takemori, who had previously verbally agreed to cancel his sublease, later demanded $200 and a refund of rent theretofore paid, as a condition precedent to the release of his claim and the surrender of possession of the land. The allegations last above referred to do not relieve the respondent of the necessity of answering complainant's bill. "The fact that a complaint shows that

full performance depends on the consent of a third person does not render it demurrable, since *non constat* but such consent may be obtained." 36 Cyc. 574, note 5. Of persuasive authority to this effect are the two cases next following: In *Borden* v. *Curtis,* 46 N. J. Eq. 468, quoting for brevity from the syllabus: "Five tenants in common—of whom complainant was one and defendant another—of several parcels of land, made partition thereof by oral agreement among themselves, which was carried out by mutual releases. One parcel, a storehouse with a yard attached, was subject to a term, not yet expired, created by the common ancestor, by lease to the defendant Curtis and his partner in business, Conover. It was part of the oral agreement of partition that defendant Curtis should procure a surrender of this lease. The yard attached to the store was set off to the complainant. On bill for specific performance of the oral contract to surrender and demurrer thereto — *Held,* * * * that the court will not presume that the defendant Curtis cannot procure his partner to join in the surrender." In *Jacobson* v. *Rechnitz,* 93 N. Y. S. 173, opinion of Gaynor, J., quoting from the syllabus: "Where the vendor in a contract for the sale of real estate agreed to procure the cancellation of a lease and vacation of the premises by the lessee before the expiration of the lease, but failed to do so, a complaint for specific performance, or, if that should be impossible, for other suitable equitable relief, if there be any, is not bad merely because the cancellation of the lease must be by the act of the lessee." *Borden* v. *Curtis, supra,* has had the qualified approval of this court, having been cited under a *semble* in *Jones* v. *Petersen,* 14 Haw. 427.

The facts in the five cases referred to in the portion hereinabove quoted of the decision of the trial judge differentiate those cases from the case at bar. In *Knox* v.

*Spratt, supra,* the impossibility of full performance, known to complainant, appears to have been affirmatively set forth in the bill and the Florida supreme court on appeal held partly on that account that a demurrer to the bill should have been sustained.   In *Citronelle Turpentine Co.* v. *Buhlig, supra,* the bill sought specific performance of a contract for a lease to be approved by Mr. George Kilborn, secretary of the Alabama Land & Development Company.   The case went to trial and the evidence showed that "Kilborn would not, under any circumstances, approve the lease as contended for by the appellants as the real contract."   The Alabama supreme court in the case last above cited held that "a court of equity is powerless to make said Kilborn approve the same, or to decree the specific performance of same by this respondent."   In the case last above cited impossibility of performance appeared in the evidence and no question of part performance and abatement was or could have been involved.   *Thompson* v. *Music, supra,* also went to trial.   The contract was for an exchange of residence properties.   The proof showed that the defendant owned but an undivided one-half interest in the property she agreed to convey.   The title of the other one-half was in the children of her deceased husband, and they refused to join in a conveyance.   The court found that "at the time the contract for exchanging properties was entered into the plaintiff knew that the defendant owned only a one-half interest in her home, and that it would require conveyances from the other heirs before the contract could be carried out."   *Kennedy* v. *Hazelton, supra,* was a suit for specific performance of a contract for conveyance of a patent shown by the averments of the bill to have been invalid by reason of facts known to the plaintiff, for which reason the decree sustaining the demurrer was affirmed by majority opinion of the court.

The court declined to retain the bill for assessment of damages but dismissed the same and left the plaintiff "to any remedy that he may have to recover damages in an action at law." In *Ormsby* v. *Graham, supra,* quoting from the text on page 727, "the contract which plaintiff seeks to enforce is alleged to be for 'the delivery to him of good and sufficient warranty deed to said premises by the said defendants, Graham, the title to said property to be shown to be good in the said defendants.' In other words, the demand is not for a conveyance of the partial or qualified interest or equity, if any they have, which the Grahams own in the land, but for the execution and delivery by them of a warranty deed which shall operate to vest a good title in the plaintiff. This, it is obvious, they could not do, and it is fundamental that the court will not, by decree of specific performance, compel a party to assume to convey a title of which he is not possessed. The vendee, in a contract where the vendor is not vested with the title he agrees to convey, may recover his damages, if any, in an action at law, but he cannot have specific performance."

The trial judge, as is hereinabove at greater length set forth, concedes generally the right of a vendee to specific performance with abatement from the purchase price where the vendor is unable to convey a good and unincumbered title, but holds that an important qualification or limitation of the above-named doctrine makes the latter inapplicable to the present case. The limitation in effect is that the doctrine of partial performance and abatement cannot be invoked by a purchaser who at the time of the making of the contract had notice of the fact that the vendor had a limited interest in the land or that his title was defective. The foregoing statement as to the qualification of the general rule is supported by the footnotes of *Eppstein* v. *Kuhn* in 10 L. R. A. (N.

S.) p. 119, and is set forth in substantially the same terms in the text of Pomeroy's Specific Performance of Contracts (3d ed. 1926) on pages 912 *et seq.* The leading case cited in the footnote last above referred to, and one of the cases cited in the footnotes of Pomeroy, in support of the foregoing qualification is *James* v. *Lichfield,* L. R. 9 Eq. 51, wherein land was contracted to be sold which the vendee knew to be in the occupation of a tenant and afterwards discovered that the agent had a lease for twenty-one years. Vendee sued for specific performance with compensation. Held, "that he had constructive notice of the lease, and was not entitled to any compensation—i. e., any abatement from the price," but, quoting further from Professor Pomeroy's note last above cited, "the decision of Lord Romilly, in the case of James v. Lichfield, can hardly be reconciled with a more recent decision of Sir J. Jessel, M. R., and the court of appeal, in Caballero v. Henty, L. R. 9 Ch. 447, upon a state of facts altogether similar. A public house was sold, and the conditions of sale stated that it was 'in the occupation of a tenant.' The vendee, a brewer, bought it intending to use it for the sale of his beer. He found that it was under a lease to another brewer for a term of which eight years remained. The vendor, suing, held by the M. R. and on appeal, that the vendee was not bound to ascertain from the tenant the terms of his tenancy—that is, that the language of the condition was not a constructive notice, and that vendor was not entitled to enforce a specific performance without making compensation. James v. Lichfield was relied upon by the plaintiff as decisive; but the court must, I think be considered as virtually overruling that case, for they denied, *in toto,* the correctness of the reasoning upon which Lord Romilly had rested his decision. He said that as the purchaser was bound to know, as between himself and the

tenant, the terms of the tenancy, so he was bound to know them as between himself and the vendor. This the court denied, and said that this doctrine, which is laid down in Daniels v. Davison, 16 Ves. 249, does not apply as between the vendor and vendee, while the matter still rests in contract, and that it refers only to the equities between the vendee and the tenant *after the legal estate has passed to the vendee.* So, although the court did not, in express terms, overrule James v. Lichfield, they overturned the entire basis of legal doctrine upon which its decision was based, and in my opinion destroyed its authority on the point that a vendee, knowing that the land is in possession of a tenant, has thereby a constructive notice of the nature and length of the tenancy, and is bound to complete without compensation."

Said the district court of appeal, 3d Dist. Cal., in *Armstrong* v. *Sacramento Valley Realty Co.,* 198 Pac. 217, quoting from p. 219: "It is in no way unlawful for a party to agree to convey lands which at the time of contract are owned by another. In such case it is presumed that the contracting party is advised that he can at the proper moment procure the title or procure the holder thereof to make or join in the proper conveyance; but in any view that is his own affair. He is none the less answerable for his breach, even though he may have placed himself in a position where he cannot comply with the terms of his contract. This principle is a complete answer to the claim of appellants that the respondent cannot maintain this action because he knew at the time of contract that the appellants did not own the property involved. However, it is not shown that he knew this, although it is shown that at least a portion of the legal title stood in the names of others. But respondent was nevertheless entitled, in any event, to spe-

cific performance as to such portion of the property as may have stood in the names of appellants or any of them."

In the present case respondent's agreement, as shown, in effect, in the complaint, was to surrender his own interest and that of Takemori—not to convey a leasehold estate for a definite term.  Complainant already owned the fee and contracted simply for the release of two claims against his right of possession, that of the respondent being under an expired lease with provision for renewal under notice which respondent asserted had been duly given, and that of Takemori being under a sublease from respondent.  There is nothing in the bill to show that the contract cannot be specifically performed either as to the claim of the respondent or as to the claim of Takemori.  The contract itself shows that the complainant knew of the existence of Takemori's claim and contains an express provision for the surrender of the same.  In the *Armstrong, Jacobson* and *Borden* cases above cited provisions of this kind have been held to be legal.  In the circumstances it would be illogical and inequitable to hold that the knowledge which alone directed the inclusion of the provision in the contract is itself an insuperable obstacle to the specific enforcement of the provision.

Appellee in its answering brief urges that the bill is demurrable not only upon the first, third and sixth grounds but upon the second and fourth grounds as well.  The second, fourth and fifth grounds were not passed upon below.  The second ground in effect is that the bill shows noncompliance with the statute of frauds.  Referring to the signed memorandum of August 4, 1925, hereinabove fully set forth the appellee (brief, p. 6) says: "The bill seeks to enforce specific performance of an alleged contract concerning an interest in lands.  The

only memorandum of the alleged contract is the receipt for the $200.00, and note for $150.00, quoted in the bill and in appellant's brief. This alleged memorandum purports to be signed by the Maui Dry Goods and Grocery Company, Ltd., a corporation, by J. Garcia, President, but nowhere in the bill is there any showing that J. Garcia had any right or authority to bind the respondent, nor is there any showing of any action by the corporation ratifying or approving the action of Garcia in entering into an alleged agreement as set forth, on its behalf." The complaint (Par. 4) alleges directly the execution and delivery by the respondent to the complainant of the instrument therein set forth and shows the payment by complainant to respondent of $200 cash and the execution and delivery by respondent to complainant of complainant's promissory note for $150, all in consideration of respondent's undertaking therein set forth. This, *prima facie,* shows sufficient compliance with the statute of frauds to require tender of an issue of fact on the part of respondent, if the latter relies upon the bar of the statute. See *Morris* v. *Basnight,* 179 N. C. 298, 102 S. E. 389.

Reference to the averments and prayer of the bill is the only refutation required to the fourth ground of respondent's demurrer, namely, that the specific performance sought to be enforced would constitute a violation of Takemori's sublease. The agreement sought to be enforced is for the surrender of the respondent's and Takemori's interests in the land described in the complaint. The bill contains a prayer for alternative relief in the event that respondent cannot perform its agreement in full, namely, "that it be compelled to surrender all of its right, title and interest in said premises to complainant and that respondent be required to compensate complainant for its failure to fully perform said

agreement in such an amount as the court shall find from the evidence is just and proper." Obviously neither alternative requires a violation of any legal right which Takemori has in the premises.

For the reasons above set forth the ruling and decree appealed from are reversed and the case is remanded to the circuit judge for further proceedings not inconsistent with this opinion.

*A. E. Jenkins* and *Heen, Stafford & Godbold* for complainant.

*E. R. Bevins* for respondent.